F. L. WILLIAMSON, to the use of David A. Windsor and David C. Grayson, trading as WINDSOR & GRAYSON,

*vs.*

GEORGE HILL, JR.

LAW. No. 22,811.

{ Decided February 25, 1884.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

1. Where parties agree verbally that the terms of a verbal agreement which they have entered into is to be found as stated in a certain paper, that paper is the proper evidence of the particular matters to which they have agreed; not that the paper is the contract between them, but that it is the best statement of what they have agreed to verbally, and it should, if the contract be a proper one to be enforced, be submitted and read to the jury as the best evidence of what the contract was.

2. Nor is it proper, with the paper thus assented to as the correct statement of the contract, that witnesses should be allowed to state from memory what the contract was, even though in doing so they are allowed to look at the paper to refresh their recollection, for the parties have agreed that the facts and terms of the agreement are to be found in the paper, and that it was to be resorted to as the evidence of their agreement.

3. The erroneous exclusion of evidence is not a good ground for a new trial if the exclusion did not injuriously affect the case of the party excepting.

4. Where a promise to pay the debt of another has for its object the release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute. But a promise is not within the statute where the promisor undertakes to pay a debt which is at the same time owing by another, in order to obtain a benefit which he, the promisor, did not before enjoy, and which is to accrue directly to himself. Such a promise is not to pay another person's debt, but to pay what the promisor adopts as his own debt. It is the price which he undertakes to pay for a benefit which he seeks. Nor does it matter that the object sought in making the promise does not turn out to be a benefit to the promisor, it is sufficient that the promisee submits to a sacrifice in behalf of the interest of the promisor, and not for the benefit of the original debtor.

### STATEMENT OF THE CASE.

This was an action of assumpsit to recover the sum of $1,000, alleged to be due under a contract entered into between plaintiff and defendant. On the trial of the cause, the plaintiff offered evidence tending to prove that one William J. Murtagh was the owner in fee simple of a farm in Prince George's county, Maryland, against which there were, on or about February 18, 1879, the following valid and sub-

sisting liens: First, a lien of one Bannon, for about $5,000·
Second, a judgment lien in favor of one Davis, for $1,000
and interest, which had been by him assigned to and was
then owned by the plaintiff. Third, a judgment in favor of
the defendant for $9,300, which had been confessed to him
by Murtagh as partial security for the payment of a debt due
by Murtagh to Hill, the latter then having as further secu-
rity for his debt a written assignment to the extent of
$10,500, of a claim which Murtagh held against the District
of Columbia for about $50,000 for advertising done by Mur-
tagh for the District of Columbia.

The plaintiff further offered evidence tending to prove
that the real estate in Maryland was, on the day already
mentioned, February 18, 1879, advertised for sale under the
plaintiff's lien, and that, thereupon, at a meeting between
the plaintiff and the defendant, at which Goldsborough,
Windsor and Murtagh were present, in consideration of the
plaintiff's withdrawal of the property from sale under his
lien, the defendant agreed to pay the plaintiff the sum of
$1,000 or so much thereof as might be necessary to satisfy
the plaintiff's judgment, with interest and costs, out of the
first $9,400 which might be thereafter received by the de-
fendant on account of the claim assigned to him by Mur-
tagh; also that at the meeting above mentioned, which was
held on the same day that the memorandum presently re-
ferred to bears date, a memorandum of agreement was
reduced to writing, and that the reason for so reducing it to
writing was that the defendant declined to sign any con-
tract, and said that his word was as good as his bond, and that
a memorandum of the agreement might be made; that this
memorandum was then reduced to writing by the plaintiff
or his agent for the expressed purpose of perpetuating the
terms of the agreement between the plaintiff and the de-
fendant, as such agreement was understood by the plaintiff
and by the witnesses; and, further, that the memorandum
was then and there read to the defendant in the presence
of these witnesses as a correct statement of the terms of the
agreement and understanding between the plaintiff and the

defendant, and was assented to by the defendant as read. Thereupon it was signed by the witnesses as witnesses of the fact.

That thereupon the property was withdrawn; that Murtagh, the debtor to all these parties, recovered a judgment on his claim against the District of Columbia, for $20,640 with interest and costs, of which sum Hill, on the 13th day of July, 1880, received, under and by virtue. of the assignment to him, $10,500, the full amount assigned to him by Murtagh out of his claim; and that he refused to pay the $1,000 which he is alleged to have agreed to pay. Thereupon the plaintiff offered in evidence the memorandum spoken of above. The court refused to admit it or to allow it to be read to the jury, but said it might be referred to by the witnesses for the purpose of refreshing their memories. The memorandum was as follows:

## "*Memorandum of Agreement.*

"This memorandum of agreement, made and entered into this 18th day of February, 1879, witnesseth, that for and in consideration of the withdrawal for three months time of the sale of the Murtagh farm, now advertised for sale at the court house door, in Upper Marlborough, Prince George's county, Maryland, by the sheriff of said county, under and by virtue of an execution issued upon a certain judgment against the said W. J. Murtagh, obtained on the law side of the circuit court of the said county, in favor of one Charles T. Davis, and by the said Davis assigned to one F. L. Williamson, Mr. George Hill, jr., of Washington city, has this day agreed to pay to the said F. L. Williamson, or to the sheriff of said county, for the purpose of paying and satisfying said judgment, or of having it assigned to him as he may elect, the sum of $1,000, or so much thereof as may be necessary to satisfy said judgment, with costs and interest thereupon, out of the first $9,400 received by him, the said Hill, on account of his assignment of a certain claim of the said Murtagh against the District of Columbia for advertising the delinquent tax lists in the National Republican

in June, 1875; which said assignment of said claim to the said Hill is duly filed in the office of the District Commissioners of said District, and in the records of the Supreme Court of the said District of Columbia, in the case of Murtagh against said District; which said assignment the said Hill has agreed to fully collect as far as he can up to the full amount of his claim thereunder and of the judgment thereupon. This agreement was witnessed and assented to by the parties hereto, in whose presence it was entered into and by whom it was reduced to writing by and with the consent of the said Hill.

"R. H. GOLDSBOROUGH,
"W. J. MURTAGH.

" Witness:
"D. A. WINDSOR."

The plaintiff then rested, and the defendant having offered testimony in denial of the plaintiff's case, the plaintiff prayed the court to instruct the jury as follows:

"If the jury believe from the evidence that the memorandum of agreement which reads as follows [here follows the memorandum above stated], was reduced to writing, at the time the agreement testified to by the several witnesses for the plaintiff and defendant was entered into, and on the day on which it bears date; and that said memorandum was reduced to writing by the plaintiff or his agent with the purpose, on his part of perpetuating the terms of the agreement between plaintiff and defendant, as such agreement was understood by plaintiff, and that said memorandum of agreement was read to the defendant as and for a correct statement of the terms of the agreement, in the presence of the said witnesses, and the defendant, not dissenting or objecting to the terms of said contract, as expressed in said memorandum, said memorandum was thereupon signed in the presence of plaintiff and defendant by said Goldsborough, Murtagh and Windsor as witnesses.

" And if the jury further believe from the evidence that plaintiff thereupon and thereafter performed all that was

agreed by him to be done under said agreement (as expressed in said memorandum) and that, relying on said agreement, plaintiff withdrew the advertisement of sale of said property, and that the said property was subsequently sold under a lien prior to the plaintiff's for a sum less than the amount of said lien, then the defendant is estopped from denying the terms of the agreement between plaintiff and defendant, as set out in said memorandum of agreement."

The court refusing so to instruct the jury, the plaintiff thereupon prayed the following instruction:

"If the jury believe from the evidence that the memorandum of agreement, which reads as follows [as before] was reduced to writing at the time the agreement testified to by the several witnesses for the plaintiff and defendant was entered into, and on the day on which it bears date; and that said memorandum was reduced to writing by the plaintiff or his agent with the purpose, on his part, of perpetuating the terms of the agreement between plaintiff and defendant, as such agreement was understood by plaintiff, and that said memorandum of agreement was read to the defendant as and for a correct statement of the terms of agreement, in the presence of the said witnesses, and was assented to as read by both the plaintiff and defendant, said memorandum was thereupon signed, in the presence of plaintiff and defendant, by said Goldsborough, Murtagh and Windsor as witnesses.

"And if the jury further believe from the evidence that the plaintiff thereupon and thereafter performed all that was agreed by him to be done under said agreement, as expressed in said memorandum, and that, relying on said agreement, the plaintiff withdrew the advertisement of sale of said property, and that the said property was subsequently sold under a lien prior to the plaintiff's for a sum less than the amount of said lien, then the defendant is estopped from denying the terms of the agreement between plaintiff and defendant, as set out in said memorandum of agreement."

This was also refused, and thereupon the court proceeded to charge the jury as follows:

"The controversy in this case has its origin principally

in what is called the Statute of Frauds, and its application to the facts that have been detailed. This statute was designed to subserve the objects of public policy and justice, and to prevent parties, from slight conversations, swearing to absolute agreements to pay the debt of another person. There must have been a great deal of this species of fraud and perjury in order to have induced Parliament, in the first instance, to have adopted legislation for its prevention. Undoubtedly the statute, although called the statute for the prevention of frauds and perjuries, had also another object in view, namely, to prevent this species of crimes, and in order to do that required contracts of this questionable character to be reduced to writing, so that the contract of the parties might speak for itself. The present case is a singular illustration of the propriety of this object of the statute. If the contract had been reduced to writing in the present case, and signed by the parties, there would, in all probability, have been no controversy, and therefore no litigation. Ever since this statute went into operation it has run the judicial gauntlet as, doubtless, few statutes have done, and has received every species of construction; parties have resorted to every measure of defeating it. The courts themselves have entertained these attempts upon the statute in such a manner as to leave their decision in a most confused, uncertain and unsatisfactory condition.

"In view of the expedition which we have to exercise in a jury trial, I told counsel that it would be unnecessary for them to cite authorities, for the very reason which I had just stated. The authorities are very numerous, and the court could be entertained with an analyzation of the decisions for days and weeks. One of the modes of taking cases of this kind out of the statute undoubtedly has been where there has been an original agreement, founded upon an adequate consideration. For instance, if the foreman of this jury should promise to pay a debt due from one of his brother jurors to one of the counsel in this case, receiving therefor a good and substantial consideration—say, the indebtedness being $1,000, and he received a consideration

14

of $500 or $100—that might be considered an original con-
tract from which he derived a substantial benefit. Then the
law says, if he has allowed the other party to execute his
part of the contract, and received the benefit himself of the
performance of the contract, it would be fraudulent to allow
him to retain this benefit, and to also allow him the benefit
of the statute. The courts have felt themselves constrained
to recognize exceptions to the statute of this description,
and to enforce contracts, although the promise was not
reduced to writing or signed by the parties. I state this by
way of illustrating the manner in which this statute has
been administered by the courts.

["It is said that this case belongs to this class of excep-
tions; that there was an original agreement upon adequate
consideration between Mr. Hill and the plaintiff in this
case. It will be your duty to consider carefully the circum-
stances, to see if there was a benefit derived from any oral
contract entered into by Mr. Hill. In the first place, if you
find that the contract was, as claimed by the plaintiff here,
and, in the next place, that Mr. Hill has derived a substan-
tial benefit from that arrangement, then probably the
plaintiff has a right to sustain this action and to recover
what was stipulated, although it was by parol.] What
are the circumstances of this case? First, Mr. Hill says
that there was no such agreement as that referred to by the
plaintiff. The paper has been quite a conspicuous feature
during the whole trial. It is conceded on all hands that
Mr. Hill refused to execute that paper.

"You can readily see how inconvenient it would be if a
lawyer should come to your place of business with a written
contract, even although you had discussed the subject pre-
viously with him, and request your signature to it, and if
you should refuse it, that you were still bound by the terms
of that contract. The object of a written contract is to show
the precise meaning of the parties to it, and after the parties
have executed the contract to bind them so that they cannot
afterwards deny or alter by parol the circumstances existing
either before or at the time. [When a party utterly refuses

to execute a paper, I am not aware of. any rule of law or of common sense that makes it bind him.] But it is said that Mr. Hill assented to the terms of the contract, saying that he would abide by the contract; that his word was as good as his bond. Here we come to the conflict of testimony between the parties as to what the contract was. The plaintiff in the case, by his witness and counsel, contend that it was a promise on the part of the defendant to pay an indebtedness due from Murtagh to the plaintiff, whenever he should realize from this claim, over a certain amount, if he should realize from it $9,400. That is the idea of these gentlemen as to what the arrangement was, and that this was not conditional at all, but was an absolute undertaking. Mr. Hill contends that the arrangement was a conditional one, and depended upon the then negotiation that was being conducted with a view to a compromise of a certain claim against the District. He states that he was authorized by Mr. Murtagh, and I think there is no dispute about that, to make the compromise. A claim had been put in suit by Mr. Murtagh against the District, and the suit was then going forward. In this stage of the case, Mr. Murtagh made an assignment of that claim to secure Mr. Hill, and in that assignment vests him with all the rights necessary to effect the compromise of the claim, he, as a minimum, to take thirteen thousand and some odd hundred dollars, and to go up as high above that as possible.

. The District refused to compromise, although advised to do so by their counsel. They were amply punished for their refusal to accept a moderate compromise, because a judgment was finally recovered for double the amount. It appears, then, that the compromise fell through, and if Mr. Hill is correct in his statement of what the arrangement was, his responsibility to the plaintiff in this action ceased with the failure of the compromise, as it was conditional upon that throughout. From that time the suit went on, and the attorney for Murtagh collected and paid Mr. Hill no more than the amount of his debt, minus, I believe, some interest which he still claims. What became of the balance of the

money is not clearly determined, but that is of no conse-
quence here. The consideration for the agreement to pay
the plaintiff here grows out of another branch of the case,
and it appears that Murtagh owned a farm in Maryland,
upon which there were two encumbrances. He executed, or
gave judgment by confession, for the third (following words
inaudible). This invested Mr. Hill with an equitable interest
in that property, and he had the right of redeeming it from
prior encumbrances, or had the right to sell it, subject to
the claims of parties holding such encumbrances. It is said
that he, and the representative of the plaintiff in this case,
prevailed upon them to stay their advertisement; to with-
draw their advertisement; they having sought to enforce
the collection of that demand, by an execution, and had
advertised the property for sale. The advertisement was
undoubtedly withdrawn, for we heard nothing further from
the sale. No further proceedings, as far as we can learn
from the testimony in this case, was taken in this direction.
[That is said to be the consideration for this promise to pay
the debt. If you can see in all these circumstances which
I have gone over, with as much respect for the testimony in
the case as I could possibly exercise, that Mr. Hill has
derived an absolute benefit from this, and that he promised
absolutely and generally to pay this judgment of Mr.
Williamson's, then I instruct you that the plaintiff will be
entitled to recover.] If you come to the conclusion that the
arrangement was a conditional one, and that Mr. Hill under-
took only to pay in the event of effecting a compromise that
was then pending, and if that compromise fell through, then
the defendant would be entitled to a verdict. [If you come
to the conclusion that he has, upon the whole, received no
beneficial consideration for the compromise to pay this debt
of Mr. Murtagh, you will also find a verdict in his favor."]

To the refusal of the court to permit the memorandum of
agreement to go to the jury, and to grant the instructions
prayed for, as well as to such portions of the foregoing
charge as are inclosed in brackets, the plaintiff excepted,
and the case came to the General Term upon a motion for a
new trial.

HANNA & JOHNSTON and R. H. GOLDSBOROUGH for plaintiff.

F. W. JONES for defendant.

Mr. Justice JAMES, after stating the case, delivered the opinion of the court:

The first question that presents itself for the consideration of this court is, whether the memorandum of agreement should have been allowed to be read to the jury. We have nothing to do with the truth of the testimony in regard to this memorandum, or of the statements contained in it. We have only to determine what legal result should follow in case they are true, or are believed by the jury to be true. All that we now say, is, that if the testimony in regard to it is believed by the jury to be true, then there was a parol agreement between the plaintiff and defendant, the terms of which are to be found in this paper. The rule is plain, that where parties agree verbally that the terms of a verbal agreement which they have entered into is to be found as stated in a certain paper, that paper is the proper evidence of the particular matters to which they have verbally agreed; not that the paper is the contract between them, but that it is the best statement of what it is they have agreed to verbally; and it should, if the contract be a proper one to be enforced, be submitted and read to the jury as the best evidence of what that contract was. This paper should, therefore, have been allowed to be read to the jury as a part of the evidence of the parol agreement, provided there was anything to submit to the jury in the shape of a contract. Nor was it proper, with the paper thus assented to as the correct statement of the contract, that the witnesses should have been allowed to state from their memories what the contract was, even though in doing so they were allowed to look at the paper to refresh their recollection. For even after looking at the paper, they would be remitted at last to their recollection, while if the testimony is to be believed by the jury, the parties had agreed that the facts and terms of the agreement should be found in this memorandum, and that it was to be resorted to as the evidence of their agreement.

It is true that the testimony shows that Hill said he would not sign any contract, giving as his reason that his word was as good as his bond ; and it is argued from this that he really did nothing more than give his word of honor. As we have already said, the court has nothing to do with the credibility of the statement. We have only to determine what the legal effect of his statement is, if the jury believe it to be true. Now, it seems to us that when one induces another to forego an advantage, it is unreasonable to suppose that the understanding between them is that that advantage is given upon an assurance that is not to be regarded as a promise, but as a mere offering of his word as a man of honor. It would be a fraud on the other party to induce him to forego an important advantage when he is about to enforce his lien against the land, and to make his money, and leave him with no other promise than that the promisor would behave like an honest man. If that is contended, we think it must be distinctly and intelligibly shown. Coupling this consideration with the fact that the same testimony goes on to say that he (Hill) said the agreement might be reduced to writing, and that afterwards when the paper purporting to be the statement of the agreement was shown to him he assented to it, a case is stated in which there was a promise which might be construed by the court—in case the jury find the fact of a promise—to be an actual agreement, and not a mere pledge of honor. Business is not conducted in that way. Men do not surrender security for a claim on a mere assurance that the other party will conduct himself well, but who at the same time refuses to bind himself.

But there is another question in regard to this memorandum, which it becomes important to consider, and that is, whether the exclusion of this paper, although error, injuriously affected the case of the party complaining, for if it did not, we ought not to grant a new trial on the ground of its erroneous exclusion. If, for example, such an agreement made by parol was not binding, it would be immaterial that it was excluded. It was argued that it comes within the Statute of Frauds ; that it was an undertaking to pay

the debt of another, and should have been in writing and signed by the party to be charged, or his duly authorized agent.   On the other hand, it was claimed that that was an original, direct promise made by Hill to Williamson, upon a consideration between them, and was not in any sense collateral to Murtagh's debt, although the money which Hill is alleged to have promised to pay, would satisfy and extinguish Murtagh's debt.

Several grounds were alleged as sufficient to take the case out of the Statute of Frauds.   It was said, for example, that inasmuch as the testimony, if believed, shows that the consideration of withholding this sale was good, if performed, and that it was performed, we have a case of an executed consideration, and that it would be a fraud on the part of the promisor to set up the Statute of Frauds, and that to such cases the statute has no application.

It is said, too, that Hill made the promise in consideration of a benefit to himself, and that, therefore, it was necessarily an original promise.   We shall deal with only one of these reasons.   The law seems to have been most satisfactorily statedby Chief Justice Shaw.   In that case a promise was made in the case of Nelson *vs.* Boynton, 3 Metcalf, 396, when an attachment had been laid on certain property, by another person, that if the attachment was withdrawn, the promisor would pay the debt.   Chief Justice Shaw, after stating that there must be in every case, whether the contract were in writing or verbal, a sufficient consideration, said:

"It is not enough that a sufficient legal consideration for a promise is proved, if the object of the promise is the payment of the debt of another, for his account, and not with a view to any benefit to the promisor.   *   *   *   The terms, original and collateral promise, though not used in the statute, are convenient enough to distinguish between the cases where the direct and leading object of the promise is to become the surety or guarantor of another's debt, and those where, although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is

to subserve or promote some interest or purpose of his own. The former, whether made before or after, or at the same time, with the promise of the principal, is not valid, unless manifested by evidence in writing. The latter, if made on good consideration, is unaffected by the statute, because, although the effect of it is to release or suspend the debt of another, yet that is not the leading object, on the part of the promisor."

Several cases are cited in illustration of this position, and the court then proceeds to say:

"The rule to be derived from the decisions seems to be this: That cases are not considered as coming within the statute when the party promising has for his object a benefit which he did not before enjoy, accruing immediately to himself; but where the object of the promise is to obtain the release of the person or property of the debtor, or other forbearance, or benefit to him, it is within the statute."

To apply this rule to the present case, we find that the testimony which would govern it, if believed, is that Hill had a judgment coming after the lien of the plaintiff, as a lien on the same property. If the property should be sold under the plaintiff's lien, and only bring the amount of the first and second liens, Hill would lose all security by his judgment lien. If it should bring more, he would get something. He had, then, an interest in preserving this property from sale. The testimony discloses his position just as the testimony in the case of the broker referred to by Chief Justice Shaw showed an interest on the part of the broker. The broker had been employed to sell certain goods which were taken in attachment. His interest was to go on and sell them. He promised under the circumstances, that if the attaching creditor would release his attachment, he would pay the debt. He was making a bargain for his own benefit.

The philosophy of the matter seems to be as it is stated by Chief Justice Shaw, that in one class of cases all that can be said of the promise is, that it is made in order to get relief for another person, and it is, therefore, nothing but

a promise to pay the debt of another person; but if the promisor has an interest of his own in the matter it is not a promise to pay another person's debt, but to pay what he adopts as his own debt. It is the price which he undertakes to pay for a benefit which he seeks. It happens that another person owes that money too; but there is nothing unreasonable in a party undertaking for a benefit which he receives thereby, to pay a certain sum which happens at the same time to be owing by another. We do not conceive that to be an undertaking in any sense to answer for the debt or default of another person. If he does not pay it, it will be his own default simply and directly. It is an original, direct undertaking on his own behalf, and not on behalf of another person, and is, therefore, not within the statute.

If, then, this testimony were to be believed, it involves a case of a promise which would be valid, although made verbally. The exclusion of this memorandum statement of the verbal contract, inasmuch as it was the best evidence, may well have had an injurious effect with the jury, because they were less likely to believe a statement from memory undertaking to set forth all of the terms of the agreement, than they were to believe the single statement that this paper had been agreed to by the parties as setting forth the terms of the agreement which had been verbally entered into. In the latter case the jury would have for their consideration the credibility of a single statement only, namely, the statement that this paper was agreed by both parties to be a correct statement of the parol contract. We can see, therefore, that the exclusion of this paper might have very materially affected the case of the plaintiff in the minds of the jury, and hence it was an error which the court must take notice of.

Later on in the charge the court came to treat this very question as to the validity of the parol agreement. Thus, after stating the case which did not come within the statute, and stating especially the case where the parol contract had been executed, the court said:

"It is said that this case belongs to this class of excep-

tions; that there was an original agreement upon adequate consideration between Mr. Hill and the plaintiff in this case. It will be your duty to consider carefully the circumstances, to see if there was a benefit derived from any oral contract entered into by Mr. Hill. In the first place, if you find that the contract was, as claimed by the plaintiff here, and, in the next place, that Mr. Hill has derived a substantial benefit from that arrangement, then probably the plaintiff has a right to sustain this action and to recover what was stipulated, although it was by parol."

A statement of the rule of law on that subject is made further along. I shall be obliged to read some portion of the charge which is not excepted to in order to make intelligible that part which is.

"It is said that he, and the representative of the plaintiff in this case, prevailed upon them to stay their advertisement; to withdraw their advertisement; they having sought to enforce the collection of that demand by an execution, and had advertised the property for sale. The advertisement was undoubtedly withdrawn, for we heard nothing further from the sale. No further proceeding, as far as we can learn from the testimony in this case, was taken in this direction. That is said to be the consideration for this promise to pay the debt. If you can see, in all these circumstances which I have gone over, with as much respect for the testimony in the case as I could possibly exercise, that Mr. Hill has derived an absolute benefit from this, and that he promised absolutely and generally to pay this judgment of Mr. Williamson's, then I instruct you that the plaintiff will be entitled to recover."

I read again the explanatory part, in order to show the meaning of the next clause excepted to:

"If you come to the conclusion that the arrangement was a conditional one, and that Mr. Hill undertook only to pay in the event of effecting a compromise that was then pending, and if that compromise fell through, then the defendant would be entitled to a verdict. If you come to the conclusion that he has, upon the whole, received no beneficial con-

sideration for the compromise to pay this debt of Mr. Murtagh, you will also find a verdict in his favor."

It is true, of course, that the party must receive the beneficial consideration; that is to say, if the consideration is promised and is not performed, there can be no recovery. But this mode of charging the jury gives them to understand that the consideration promised must turn out to be a benefit. That is the inevitable effect of the language used—that he must derive a substantial benefit. Now, the consideration was the withdrawing of this advertisement for Hill's benefit. It might not turn out to be of any use to him at all. For example, if Mr. Murtagh should take out of his pocket the debt he owed him and pay him, he would owe nothing to the withdrawal of the advertisement. Nevertheless, it is a perfect and sufficient consideration if the promisee submits to a sacrifice and withdraws his advertisement for the benefit and in behalf of the interest of the promisor, and not for the benefit of the original debtor, another person. This instruction leaves the jury to suppose that the benefit must turn out to be a substantial benefit to this party. It was enough, although it did not benefit him in the end, although he got his money from another source and not from this man, that the promisee made the sacrifice in behalf of his interest, and kept his promise. The testimony tends to show that he did both; that he made the withdrawal and continued to keep it out for the length of time agreed upon. That made a case of a promise made upon a consideration and under such circumstances as to show that it was not a promise to pay the debt of another, but a promise to pay that which the promisor undertook to make his own debt.

For these reasons, we think that there was error in the trial below, and that a new trial must be granted.

Mr. Chief Justice CARTTER dissented.